ROBERT TAYLOR and JESSE TAYLOR, Respondents, v. ATLAS SECURITY COMPANY, a Corporation, Appellant.

In the Kansas City Court of Appeals, March 5, 1923.

1. **BILLS AND NOTES: Chattel Mortgage: Fraud: Fraudulent Representations: Evidence Held to Show That Purchaser of Note and Mortgage Had Actual Knowledge That the Same Were Procured by Fraud of Mortgagee at Time of Sale of Automobile to Plaintiffs.** Where defendant, a securities company, purchased a note secured by chattel mortgage on an automobile, both of which had been procured by fraudulent representations on the part of the mortgagee, the fact that defendant knew the value of the automobile at the time it was sold to plaintiffs and at the time it purchased the note and chattel mortgage to be actually worth less than half the face of the mortgage, and where the note and mortgage were upon blanks furnished by defendant, one of whose officers was related to an officer of the mortgagee, *held* that the facts surrounding purchase of note and mortgage by defendant give rise to strong inference that defendant had actual knowledge of fraud perpetrated by mortgagee upon the plaintiffs.

2. **TENDER: Fraud: Tender During Trial of Balance Due on Automobile for Which Note Was Given and Secured by Chattel Mortgage Thereon, Held Not an Admission of Validity of Note and Mortgage, or of Liability Thereon.** In an action to annul and cancel a note and chattel mortgage executed by plaintiffs and enjoining defendant from prosecuting a suit in replevin for an automobile covered by the mortgage and ordering that plaintiffs recover from defendant possession thereof, the tender by plaintiffs of amount due on automobile during the trial, *held* not an admission of the validity of note and chattel mortgages, and their liability thereon, where note and mortgage were claimed to have been procured by fraud.

Appeal from the Circuit Court of Jackson County.— *Hon. Allen C. Southern,* Judge.

AFFIRMED.

*West & Willbrand* for respondent.

*Marley & Reed* for appellant.

BLAND, J.—This is an appeal from a decree annulling and canceling a note and chattel mortgage executed by plaintiff, enjoining defendant from undertaking to prosecute a suit in replevin for the property mortgaged and ordering that plaintiffs recover of the defendant possession of the automobile covered by the chattel mortgage securing the note.

The facts show that the plaintiffs were husband and wife; that they were uneducated negroes without business experience; that Robert Taylor could not read but that Jessie Taylor had received a small amount of schooling and could read and write "a little." On August 9, 1920, plaintiffs purchased of the Jones-Tharp Motor Company a second-hand automobile for the price of $800. The Jones-Tharp Motor Company was a corporation engaged in buying and selling automobiles in Kansas City, Missouri. The transaction in which plaintiffs bought the automobile was had at the office of the Jones-Tharp Motor Company, both of the plaintiffs being present. A salesman of said motor company told plaintiffs that the price of the car was $800 and that he would sell it to them on payments, $400 cash and the balance to be paid in ten monthly installments. The agreement was that the automobile should remain in the possession of the Jones-Tharp Motor Company until the entire purchase price was paid. The $400 was paid as agreed and $390 had been paid in weekly installments within four or five months, leaving a balance of $10 due. The payments were all made to the Jones-Tharp Motor Company. When plaintiffs tendered the $10 balance due they were told that they had executed a mortgage and note which was then owned by the defendant, and that the balance due upon the note was much greater than $10. Plaintiffs thereupon brought an action to replevy the automobile and after getting the same in their possession under the writ, it was replevied by the defendant under the chattel mortgage with condition broken.

So it appears that plaintiffs are out $790 and defendant has the automobile.

On the day the automobile was purchased plaintiffs were asked by the agent of the Jones-Tharp Motor Company to sign a paper which was represented to them to be merely a paper to show the public that plaintiffs had bought the car, the agent promising that when the last payment was made the paper would be turned over to plaintiffs. The paper was not read, the agent stating that there was no use in reading it. Mrs. Taylor signed her own name and that of her husband to the paper. When plaintiffs offered to make the last payment of $10 upon the automobile they found, as before stated, that this paper was a note and chattel mortgage, the note being embodied in the mortgage.

Defendant in its brief admits that the testimony shows that plaintiffs were overreached by the Jones-Tharp Motor Company but contends that the defendant had no knowledge of the transaction between the plaintiffs and said company when it purchased the note and chattel mortgage. The treasurer of the defendant testified that at the time defendant purchased the note it did not know anything about the transaction beween plaintiffs and the Jones-Tharp Motor Company except that which appeared on the face of the note and mortgage. The facts in reference to this matter show that the note and chattel mortgage were purchased by the defendant from the Jones-Tharp Motor Company the day after their execution. The mortgage does not seem to have been acknowledged. It provided for insurance on the automobile to be taken out in favor of the mortgagee at the expense of the mortgagor. There is no dispute that plaintiffs paid the sum of $390 upon the car but the balance claimed by defendant to be due upon the note is made up of interest and an insurance premium of $58.10. No insurance had been taken out at the time the note was transferred to the defendant but the latter took out the policy and gave the insurance company the information necessary for its writing. The pol-

icy contains the usual mortgage clause and states that the automobile actually cost the insured, described as R. Taylor, the sum of $800.

Defendant's treasurer testified that for three or four years it had bought all of the automobile paper of the Jones-Tharp Motor Company; that it furnished it and other companies from whom defendant purchased such paper blank forms of notes and mortgages with blank indorsement to the defendant; that the note and mortgage in this case were upon blanks furnished by it; that the defendant paid the sum of $400 for the note and agreed to pay the insurance premium in addition; in other words, that defendant paid $458.10 for the note. The note was in the sum of $504.30 and was made payable to the defendant. As before stated, all of the payments made upon the automobile were made after the purchase of the note by the defendant except the original payment of $400. These payments were made to the Jones-Tharp Motor Company. Of course, the information furnished in the insurance policy shows that defendant knew the purchase price of the car. Defendant's treasurer further testified that when defendant bought these notes they were secured by mortgages on automobiles and it was their purpose to know on what defendant was lending its money and that he knew automobiles "pretty well;" that it knew the amount of the loan upon this car but denied that he knew the value of this automobile at the time. The uncontradicted evidence shows that the value of the car was $300 at the time it was purchased by plaintiffs. In view of the character of the business of the defendant and the testimony of its treasurer we think there is no question but that defendant knew the value of this automobile at the time it was sold to plaintiffs and at the time it purchased the note and chattel mortgage. Of course, defendant did not rely on the security of plaintiffs' signatures and the Jones-Tharp Motor Company evidently had little financial standing as it shortly went into bankruptcy.

The insurance policy was written by Oppenheimer

Brothers, agents for the insurance company. This agency was operated by three brothers, two of these were interested in the defendant, one being president and the other secretary. Mr. Jones of the Jones-Tharp Motor Company was a brother-in-law of one of the Oppenheimers. While this family connection between these various companies may not be very material in this case it has some bearing on the issues in view of the other facts. However, we might say that there is no other evidence of any connection between these companies.

Defendant contends that the record shows that defendant purchased this note and mortgage without any knowledge of the fraud practiced upon plaintiffs by the Jones-Tharp Motor Company. If this be true, it follows, the burden being upon the plaintiffs to show knowledge of the fraud on the part of the defendant at the time it purchased the note and defendant having introduced evidence tending to show lack of such knowledge, that the finding should have been for the defendant. The rule in regard to the burden upon the parties in cases of this kind is stated in Bank of Hale v. Linneman, 235 S. W. 181—

"The rule in regard to the burden of evidence in matters of this kind is that this burden is on the holder to prove his good faith and lack of notice of fraud when fraud has been shown in the procuring of the note. If the holder shows this, then the burden is upon the defendant to prove specific facts tending to show plaintiff's actual knowledge of the defect in the title or his bad faith. In case of defendant's failing to offer any evidence to that effect, plaintiff is entitled to a directed verdict. [Downs v. Horton, 230 S. W. 103, and cases therein cited.] Mere suspicious facts, or facts that would put a reasonable man on inquiry, or negligence, is not sufficient to charge a purchaser of a note with notice of the fraud. Actual notice of the facts concerning the execution of the note must be brought home to the holder. Nothing short of actual knowledge or bad faith will defeat the holder's title. [Downs v. Horton, supra, loc.

cit. 106, and cases cited.]   However, such actual knowl-
edge may be inferred from the facts and circumstances
surrounding the purchase of the note by the holder, but
such facts and circumstances can not be inferred from
things that would merely put a prudent man on inquiry.
[Downs v. Horton, supra, loc. cit. 107, and cases cited.]''

We think that the facts surrounding the purchase of
the note and mortgage by the defendant give rise to a
strong inference that defendant had actual knowledge
of the fraud perpetrated by the Jones-Tharp Motor Com-
pany upon plaintiffs.  Perhaps none of the circumstances,
detailed supra, by itself would show this knowledge but
taken all together they strongly suggest it.  Especially
the information that defendant knew that at the time it
purchased the note and chattel mortgage the automo-
bile was actually worth only $300 when it was sold for
$800, an outrageous price.  We think that these circum-
stances together with the close relationship existing be-
tween the parties, the fact that the Jones-Tharp Motor
Company used blank forms of the defendant company
and that defendant was named as payee in the note
signed by the plaintiffs; that defendant purchased all
of the Jones-Tharp Motor Company's automobile paper;
that the latter company collected the payments due the
company after the note and chattel mortgage were sold
to the defendant without giving any information to plain-
tiffs as to the actual ownership of the note and mortgage;
that the automobile remained in the possession of the
Jones-Tharp Motor Company; that the paper was pur-
chased by the defendant immediately after its execution
and that defendant took out the insurance, established
knowledge on the part of defendant.   [Leavitt v. Tay-
lor, 163 Mo. 158.]

During the trial plaintiffs tendered the $10 due on
the automobile, using these words, ''We wish to tender
in court $10 that is still due on the purchase price of the
car.  (Laying down two five dollar gold pieces, on the
table.).''  Defendant refused the tender and now claims
that plaintiffs by making it admitted the validity of the

note and chattel mortgage and their liability thereon. The tender was not on the note and we think it constituted no admission. It was no doubt made on the theory that defendant stood in the shoes of the Jones-Tharp Motor Company, and that a balance of $10 was due on the car. One of plaintiffs' theories was that the two companies were in fact but one concern.

The judgment is affirmed. All concur.